## J. W. Ratliff *v.* The State.

Continuance — New Trial.— See this case for evidence *held* not inconsistent with the truth of evidence for which a continuance was asked, and for which, the continuance being refused, a new trial should have been awarded.

Appeal from the District Court of San Saba. Tried below before the Hon. A. O. Cooley.

The indictment charged the theft of two horses, the property of M. J. Murray and Morgan Bagley, in San Saba county, Texas, on the 25th day of January, 1882. The jury rendered a verdict of guilty, and assessed against the defendant as punishment a five years' term in the penitentiary.

The defendant's application for a continuance was based upon the absence of the witnesses W. Jones, John Hamilton and C. McKeenn, and alleged that by the witnesses Jones and Hamilton he could prove that on or about the 23d day of December, 1881, in the presence of

the witnesses Jones and Hamilton, the defendant received from McKeenn authority to hunt for and take charge of certain horses claimed by McKeenn as his property. That McKeenn gave to the defendant a memorandum of the brands of the horses, described the horses to the defendant, and informed the defendant that the said horses had strayed off, and that he, McKeenn, had heard of them west of the Colorado river in San Saba county; that the brands as given to the defendant by the said McKeenn were as follows: N T on left and right shoulder of a medium sized bay pony, and J N E on the left shoulder of a medium sized bay pony. That the said McKeenn promised to pay the defendant to hunt for and deliver the horses to him. That in January, 1882, after the above agreement, in the presence of said witnesses Jones and Hamilton, after having returned from hunting the horses, the defendant delivered to the said McKeenn two horses suiting the description of the two horses which McKeenn authorized him to hunt for, and that McKeenn then and there took possession of the said horses, claiming them as his property, and as the horses which he authorized the defendant to hunt for; and that McKeenn in the presence of said witnesses paid to the defendant the sum of fifteen dollars for his services. The application alleged that the defendant also expected to prove these facts by McKeenn, and that all of this occurred in the McKeenn's house, in Hamilton county, Texas.

M. J. Murray testified for the State that he and Morgan Bagley owned two bay horses in partnership, valued respectively at $50 and $30. The range of these two horses was in San Saba county, about nine miles east of the town of San Saba. One of the horses was branded N E on the shoulder, and the other with a very dim H E T on the hip. He had never given to the defendant or other person authority to take up, use or otherwise dispose of the two horses or either of them. On or about

January 25, 1882, he was informed that these two horses had been driven from their range, and he had immediate search instituted, but failed to find them. Neither the witness nor his partner had ever recovered either of the horses described since they were driven off the range in January, 1882. He purchased the horse branded N E from W. M. Allison, and his range was near W. E. Crawford's place.

Morgan Bagley testified that he and M. J. Murray owned the horses in question, in partnership, and that they were branded as stated by Murray. This witness burned the H E T brand on one of the horses, but succeeded only in making a dim impression. He could not say that the brand after he put it on the horse was visible. He had never given any one permission to take the horses. Their range was in the neighborhood of W. E. Crawford's place, and they were taken from that range by the defendant in January, 1882, and the witness has never seen them since.

W. E. Crawford testified, for the State, that on or about the 25th day of January, 1882, the defendant penned three horses in witness's pens in San Saba county, claiming to have traded for one of them, which was a sorrel horse belonging to the witness's father-in-law. The witness told him that he did not think that his father-in-law would trade off the sorrel horse. The defendant then roped the sorrel horse, and after examining the brand said that he was mistaken, and turned the horse out. He then asked if the witness knew of any stray horses in the neighborhood, and the witness answered that he did not, unless two horses which he saw a few days before were estrays. The defendant promised to give the witness the brands of the horses for which he was hunting, but did not do so. He went off in a short time and returned with two horses, one branded N E on the left shoulder, and the other branded N T on both shoulders.

The witness did not notice the H E T brand on either horse, though he examined them. The defendant roped these two horses and left with them, going in a north-easterly direction. He did not claim to be hunting his own horses, but said that he was gathering them for some man in Hamilton county, whose name he mentioned, but which the witness did not remember. He told the witness that the man for whom he was gathering the horses lived on Cowhouse creek, about ten miles from the town of Hamilton. As the defendant rode off, in answer to an inquiry of the witness, he said that his name was Wamble, and did not mention the name "Ratliff." The witness knew the range of the horse branded N E to be ·in the neighborhood of his house. That horse at one time belonged to W. M. Allison. The witness was a stockman, had been in the range often since these horses were taken off by the defendant, and had never seen them since.

W. M. Allison testified, for the State, that he knew the horse branded N E and described by the witnesses Murray, Bagley and Crawford. The witness raised that horse from a colt, and sold him to Murray & Bagley. He always ranged near the house of the witness Crawford.

Steve McLean, a witness for the State, testified that he knew the defendant. He saw the defendant on or about the third Saturday in January, 1882, at the place of W. E. Crawford in San Saba county. He was, when the witness saw him, just in the act of starting off with the horses described by the witnesses M. J. Murray, Morgan Bagley and W. E. Crawford. The witness recognized one of the horses as one which at one time ranged in that neighborhood, and which once belonged to W. M. Allison. The description of the two horses as given by the witnesses Murray, Bagley and Crawford is correct. The witness did not at that time hear the name of the defendant as given by himself, but learned it afterwards.

Soon after the defendant left, the witness took his trail and followed it, and found that he went in the direction of Hamilton county after he crossed the Colorado river at Red Bluff crossing.   Five or six miles from Senterfeit, on the same road, the tracks turned out of the road and went into the post-oaks.   The witness could see the tracks plainly, as rain had fallen a short time before.   The defendant was riding one horse and leading the two horses described by the several witnesses.   The trail came back into the road about three hundred yards above where it left it.   The witness lost the trail before he got to the town of Senterfeit, being unable, because of the travel on the road, to distinguish tracks, but he traveled on in a direct course to Cowhouse creek in Hamilton county, where the defendant had said he lived.   The witness also went to the town of Hamilton, the county seat of Hamilton county, and inquired of the sheriff of that county, all of his deputies, and every one else that he met while there, of the defendant and the two horses.   The witness left in the town a full description of the defendant, giving the name of Wamble as he had received it from the defendant, and also a description of the three horses, the one ridden by the defendant and the two in controversy which he led from San Saba county.   The witness could learn nothing on this trip of either the defendant or the two horses, and he did not see the defendant again until the Monday before the trial, when he saw him in the Brown county jail.   The witness was a stockman and lived near W. E. Crawford's place in San Saba county. He has never seen the two horses described on the range since they were taken off by the defendant.   The defendant gave his name at Brownwood as Jesse Ratliff. When the defendant went off with the horses he asked the way to Senterfeit, and his trail went in that direction.

*Townes & Burleson*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J.   J. W. Ratliff was convicted of the theft of two horses, the property of M. J. Murray and Morgan Bagley.

The defendant Ratliff moved for a continuance, which was overruled, and in his motion for a new trial the overruling of his application is assigned as a ground.   We deem it unnecessary to say that to enter upon a discussion of the facts in this case in order to show why the court below should have granted the new trial, further than to say that we are of the opinion that there is not that conflict between the evidence of the State and the facts expected to be proved by the absent witnesses which renders the truth of the proposed facts improbable. (The Reporters will give all of the evidence.)   The judgment is reversed and a new trial awarded.

*Reversed and remanded.*